## CONSTITUTION INDEMNITY CO. OF PHILADELPHIA v. MORGAN et al.
### No. 2654.

Court of Civil Appeals of Texas. El Paso.
April 14, 1932.

Rehearing Denied May 6, 1932.

Touchstone, Wight, Gormley & Price, of Dallas, and R. A. D. Morton, of El Paso, for appellant.

R. F. Burges and Walter S. Howe, both of El Paso, for appellees.

WALTHAL, J.

Appellee J. E. Morgan, in 1929, had made a contract with the University of Texas for the erection of a gymnasium, auditorium, and

swimming pool to be erected at Austin, and thereafter, on June 17, 1929, Morgan made a subcontract with J. N. Johnson, operating and doing business as South Texas Steel Erection Company whereby, in the erection of said gymnasium, auditorium, and swimming pool, Johnson was to furnish all material and labor and erect and rivet in place about seven hundred 'tons of structural steel, at the price of $17 per ton, Johnson, in addition thereto, agreeing to furnish all tools and equipment, paint all connections, and do all riveting, as per an exhibit attached to 'and made a part of the appellee's petition, payments therefor to be 85 per cent. of the materials in place, as the work progressed. Morgan required Johnson to give bond for the faithful performance of his subcontract, which Johnson did with the appellant herein as his surety; Morgan paying the amount of the premium thereon.

. Morgan brought this suit stating the facts substantially as above, and asked judgment against Johnson and appellant, Constitution Indemnity Company of Philadelphia, in the ˜sum of $3,996.37, with interest, alleging that he (Morgan) did all that was required of him under said contract, but that Johnson and South Texas Steel Erection Company failed and refused to carry out the said subcontract and defaulted in its performance, stating wherein he defaulted, and that he (Morgan) was compelled to and did expend large sums of money in carrying out, executing, and performing the work which Johnson and South Texas Steel Company had contracted to do, all to his cost and damage, as above stated.

Morgan alleged in substance that the sums of money expended by him for Johnson were agreed upon as correct, reasonable, and necessary; that such agreement was made in the presence of an agent of appellant bonding company and a copy of such agreement was attached to and made a part of his petition; that Morgan gave notice to appellant of the inability of Johnson to perform his said contract, and he was instructed by an authorized agent of appellant bonding company to continue advancing pay rolls but to pay no more money to the South Texas Steel Erection Company; that acting under said instruction he was forced to expend the above-mentioned sum in excess of the original contract price for which he sues.

Johnson filed an answer to Morgan's suit but thereafter paid no attention to the suit.

Appellant bonding company filed answer setting up various defenses, principally to the effect that, as a matter of fact, Johnson had completed his subcontract; that appellant was released as surety because Morgan had made excess payments to Johnson in violation of the contract either voluntarily on Morgan's part, or by reason of a subsequent contract between Johnson and Morgan, thereby discharging the surety; that Morgan had discharged the surety by making payments to or for Johnson greatly in excess of what was· allowable under the contract, that is, he (Morgan) failed to retain the 15 per cent. required; that the contract requirement that payments were to be made on certificate of the architect ·was wholly disregarded; that Morgan allowed Johnson to use his (Morgan's) credit, Morgan thereby incurring liabilities greatly in excess of the amount due Johnson; that Morgan had paid out various sums for material, etc., wholly beyond the terms of the contract.

The case started with a trial to a jury, but later the jury was waived and the matter submitted to the court; the court entered judgment against Johnson and appellant, surety, for the amount sued for. The court filed findings of fact and conclusions of law.

In the first two paragraphs of the findings the court found that Morgan entered into the contract for the erection of the gymnasium, auditorium, and swimming pool, as stated in the petition, and the making of the subcontract with Johnson, as stated; Johnson doing business under the name of South Texas Steel Erection Company. The subsequent findings are substantially as follows:

Third. Johnson proceeded under said contract until about the 18th of November, 1929, when Morgan, being informed by Johnson that he was without funds or credit to complete the contract, submitted the facts to the general agents of appellant bonding company, Trezevant & Cochrane, and on that day Morgan was authorized by appellant, acting through said general agents, to proceed with the execution of the contract, under instructions to refrain from advancing to the South Texas Steel Erecting Company any further money until work under their contract was completed, but otherwise, Morgan to continue to advance the weekly pay rolls, in order that the job might be completed as soon as possible.

Fourth. That at the time of the interview between Morgan and the agents of appellant as above, Morgan had not breached his contract with Johnson or with appellant surety company; that the authorization of the agents of the appellant surety company to proceed with the contract and to advance money for weekly pay rolls waived the provisions of the contract requiring Morgan to retain 15 per cent. of the money earned thereunder, and such authorization was a ratification of what had been done by Morgan and Johnson under the contract, and was a waiver of any requirement of written notice to appellant surety company.

Fifth. Payments made by Morgan to or for Johnson were not made upon certificates of the architects representing the university,

but were made in accordance with the contract between Morgan and Johnson.

Sixth. Morgan was compelled to expend the sum of $3,996.37 in doing the work which Johnson and South Texas Steel Erection Company had contracted to do, and such expenditures so made were reasonable and necessary payments for labor and material necessary in the completion of said contract.

Seventh and Eighth. Morgan retained the portion of the contract price specified until authorized as stated to make payments in advance and in excess thereof.

Ninth. The expenses for labor and material so incurred by Morgan for and on behalf of Johnson in excess of the amount due him as per his contract amounted to $3,996.37, and which sum was agreed upon on February 27, 1930, between Morgan and Johnson in the presence of D. Y. Ellis, agent of appellant surety company.

The court concluded as a matter of law that Morgan was entitled to recover the sum of money as stated, and that appellant, surety, was entitled to recover over against Johnson.

## Opinion.

Appellant surety company submits that a reversal of the case should be ordered for the following reasons: .

Because under all the evidence Johnson completed his contract with Morgan in accordance with its terms.

The evidence shows that Johnson completed the contract, but only after he had signified to Morgan his inability to proceed further with the contract, and Morgan, acting with Johnson's consent and under the request of appellant surety company, had advanced sufficient money and material to Johnson to complete the contract, as found by the trial court. It was with such financial assistance as Morgan then gave him that he completed his contract. Briefly stated, and without quoting the obligations at length, Johnson agreed with Morgan that he (Johnson) would furnish all material, erect and rivet in place approximately seven hundred tons of structural steel in the Gymnasium Auditorium Building for the sum of $17 per ton; that he would furnish all labor, tools, and equipment; paint all connections and rivets after riveting.

Appellant, surety for Johnson, obligated itself to a faithful performance of the contract on Johnson's part.

■ We do not concur in appellant's contention that the extent of appellant's obligation was that Johnson would actually complete the contract; he was to furnish the material, perform the labor, and meet the pay rolls. Just prior to November 18, 1929, while the work was in progress, Johnson found that he was unable financially to proceed with the contract at the price agreed upon and so notified C. W. Griem, Morgan's superintendent in charge. Griem at once reported the matter of Johnson's inability to proceed with the contract, to appellant's general agents at Dallas, Tex., with the result as in the court's findings stated above. As stated in the court's sixth finding, with Morgan's expenditure of $3,996.37, in doing what Johnson had contracted to do, Johnson was enabled to complete the job. In other words, instead of appellant rendering the necessary financial assistance to Johnson, or of having Johnson's contract completed by another, appellant through its agents, as found by the court, authorized Morgan to advance the means necessary, and have Johnson complete his contract.

Appellant refers us to Carnegie Library Ass'n v. Harris, 43 Tex. Civ. App. 165, 97 S. W. 520; First Nat. Bank v. American Surety Co. (C. C. A.) 53 F.(2d) 747; and Hess & Skinner v. Turney, 110 Tex. 148, 216 S. W. 623. We think the cases are distinguishable in their facts from the instant case, and are not applicable.

Appellant questions the court's fifth finding, and insists that Morgan breached the contract in that payments made by Morgan were not made upon certificates of the architect representing the university, but were made in accordance with the terms of the contract between Morgan and Johnson.

The evidence on the issue is too extensive to reproduce here. We have examined it in detail, and have concluded that the evidence may support the finding that payments made by Morgan were made in accordance with the terms of the contract between Morgan and Johnson.

Under section 4 of the contract Morgan was under obligation to pay in accordance with section 5 as the work progressed, possibly at the end of each day's work if Johnson so desired, but not to exceed the 85 per cent. of the material in place. In considering the payments to be made, section 4, typewritten in part, otherwise printed portion, seems to contemplate payments to subcontractor on a different basis than an architect's certificate. Section 5, under article 37, referred to in section 4, contains subprovisions relating to contractors and subcontractors. Under that article the contractor agrees:

"(e) To pay the sub-contractor upon the issuance of certificates, if issued under the schedule of values described in Art. 24 of the General Conditions, the amount allowed to the contractor on account of the sub-contractor's work to the extent of the sub-contractor's interest therein.

"(f) To pay the sub-contractor, upon the issuance of certificates, if issued otherwise than in (e), so that at all times his total pay-

ments shall be as large in proportion to the value of the work done by him.

"(g) To pay the sub-contractor to such extent as may be provided by the Contract Documents or the sub-contract, if either of these provides for earlier or larger payments than the above."

The word "above" evidently refers to the paragraphs copied, all in the same article relating to contractors and subcontractors.

The surety's bond incorporated the provisions of the subcontract, and hence incorporated the provisions in regard to payment. The court evidently, in the finding, acted upon the theory that there was a difference in the manner of payment, and upon certificates of the architects representing the university, and one made in accordance with the contract between Morgan and Johnson. We are not prepared to say his holding is error.

Appellant submits that its letter of November 18, 1929, from Patterson to Morgan was the only authorization given by appellant, or any of its agents, respecting the matter (referred to. in the letter), and it was not a ratification or waiver, because neither was pleaded, and because, under the facts, if pleaded, there was no proof to sustain either waiver or ratification, and because the letter speaks for itself.

In the sixth and subsequent paragraphs of his petition Morgan pleaded, respectively, the breach of the contract by Johnson and South Texas Steel Erection Company, their failure and refusal to carry out said contract, and that by reason of such breach and failure Morgan was compelled to expend the sums of money sued for; that when it became apparent to Morgan that the contract would not be carried out by Johnson as in the bond provided, Morgan gave notice to appellant surety company; and that Morgan, Johnson, and South Texas Steel Erection Company and appellant acting through its claim agent and adjuster, naming him, checked over and agreed upon each and all of the several items of expense incurred in the execution of this contract, and agreed that Morgan was entitled to recover the sums sued for, itemized and made a part of the petition.

In the matter of Johnson's failure to carry out his contract, and the action taken by Morgan in reference thereto, the trial court made findings 3 and 4 stated above and which, for brevity, we need not restate. The letter written by appellant's agents to Morgan is not stated in the court's findings so we copy it here. It is as follows:

"Dallas, Texas, Nov. 18, 1929.
"Mr. J. E. Morgan,
"El Paso, Texas.
"Dear Sir: Attention: Mr. Griem.
"Re: Bond $27331 –S. Texas Steel Erection Company. Confirming our conversation of even date regarding your contract with the above concern on the gymnasium and swimming pool at Austin, Texas, we believe it will be the best for all concerned for you to refrain from advancing to the South Texas Steel Erection Company any further money until the work under their contract is completed.

"It will be satisfactory with us for you to continue to advance the weekly pay rolls in order that the job may be completed as soon as possible, at which time a final settlement can be made between Mr. Johnson and yourself.

"Yours very truly,
"Trezevant and Cochran,
"Southwestern Managers,
"J. W. Patterson,
"Bonding Department."

Mr. Griem and Mr. J. W. Patterson each testified at length as to what occurred in the conversation between them previous to the writing of the above letter. We need not repeat the conversation. It was in substance that Griem told Patterson that Johnson was not able to complete the work and suggested taking over the job and presented figures at which the job could probably be completed. The time was short within which the entire job was to be completed. Griem said Patterson instructed him "to continue the way we had been, continue everything the easiest way out for everybody concerned that had signed the contract. I explained to Mr. Patterson all we had done; he said to proceed the same way we had been proceeding."

Patterson testified:

"Q. I want to quote you correctly; I believe you said Mr. Griem told you it looked like the job was going to suffer a loss, and you told him to go ahead and finish the job, and if they had a just claim the company would pay it. Isn't that the substance of your testimony? A. I said if the claim was presented and was a just one that the claim would be paid.

"Q. You suggested he take the job over personally? A. Yes.

"Q. And you wrote that letter of November 18th? A. Yes, sir."

We think the trial court's findings on the facts are sustained under the pleadings and by the evidence.

The conversation, as above, between Griem and Patterson immediately preceding the writing of the letter, instructing Morgan to proceed as formerly and pay the weekly pay rolls, would seem to necessarily include materials as well, as in their conversation to "take the job over personally," since there would likely be no weekly pay rolls if there was no material to install.

Section 1 of the contract provides: "The

sub-contractor agrees to furnish all material and perform all work as described in Section 2 hereof." Section 2 provides that "the sub-contractor and contractor agree that the materials to be furnished and work to be done by the sub-contractor are the erection and riveting in place of approximately seven hundred tons of structural steel," and as set forth in letter of proposal attached to the contract and made a part of the contract.

After a careful review of the evidence. we have concluded that the evidence sustains the trial court's findings.

The case should be affirmed, and it is so ordered.